UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STAR WAY LINES and SVITLANA MELNYK, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-cv-4842 |
| v. | ) ) | Hon. Steven C. Seeger |
| MARTIN J. WALSH, Secretary DEPARTMENT OF LABOR, and UNITED STATES DEPARTMENT OF LABOR, EMPLOYMENT AND TRAINING ADMINISTRATION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Svitlana Melnyk is a dispatch manager at Star Way Lines, a local trucking company. She has worked for that company for the last six years as an independent contractor. By all appearances, she is good at her job, because the company wants to hire her as a permanent employee.

But there is a regulatory roadblock. Melnyk is from Ukraine, and is not a citizen. Before bringing her on board, Star Way Lines needs to receive an alien labor certification from the Department of Labor to hire her as an employee. So Star Way Lines submitted an application.

The Department of Labor eventually denied the application. The Denial Notice stated that Melnyk didn't have the requisite qualifications for the job. When making that decision, the Department considered her qualifications when the company hired her as an independent contractor in 2013, not when the company applied for the certification to hire her as an employee

in 2019. So, in the Department's view, the fact that Melnyk had six years of experience in the job didn't count, because the relevant time was the moment when she joined the company.

Star Way Lines and Melnyk did not challenge the DOL's decision administratively. Instead, they filed this lawsuit. They seek a declaratory judgment that the Department of Labor's decision violates federal regulations and is arbitrary and capricious. Based on the administrative record, the parties filed cross motions for summary judgment.

For the reasons stated below, the Court denies Plaintiffs' motion for summary judgment. The Court grants Defendants' motion for summary judgment for lack of exhaustion.

## Regulatory Framework

Before diving into the facts, the Court will provide a brief overview of the regulatory framework. The main idea is that an employer needs to obtain a certification from the United States Department of Labor before it can permanently employ a noncitizen.

The Department of Labor administers a labor certification program where employers can permanently employ noncitizen workers in the United States. *See* 8 U.S.C. § 1182(a)(5)(A)(i); 20 C.F.R. § 656.2(c). The Immigration and Nationality Act lays out the steps that an employer must complete under that program. *See* 8 U.S.C. § 1101 *et seq.*

The process starts with certification from the Department of Labor. The employer gets the ball rolling by filing an Application for Permanent Employment Certification (*i.e.*, an "ETA Form 9089") with the Department of Labor. *See* 8 U.S.C. § 1182(a)(5)(A)(i); 20 C.F.R. § 656.17(a)(1).

When the ball arrives in the agency's court, the agency will approve the certification if (1) there are not enough United States "workers who are able, willing, qualified, and available" for the proffered job, and (2) the employment of the noncitizen "will not adversely affect the

wages and working conditions of similarly employed United States workers." *See* 8 U.S.C. § 1182(a)(5)(A)(i)(I)–(II). In other words, the agency considers the impact of hiring a noncitizen over a citizen.

This inquiry requires the Department of Labor to consider a few factors before making its decision about certification. Relevant here, the Department of Labor must evaluate whether the noncitizen meets the employer's actual minimum requirements for the job at the time of hiring. *See* 20 C.F.R. § 656.17(i) (stating that the "DOL will evaluate the employer's actual minimum requirements").

If the noncitizen is already working for the employer, the DOL will consider the qualifications of the employee at the time of hiring, including "as a contract employee." "If the alien beneficiary already is employed by the employer, in considering whether the job requirements represent the employer's actual minimums, DOL will review the training and experience possessed by the alien beneficiary at the time of hiring by the employer, including as a contract employee." *See* 20 C.F.R. § 656.17(i)(3).

So, the agency looks at the employer's requirements, and the employee's qualifications, and checks if they line up. *See* 20 C.F.R. § 656.17(i)(4) (noting that the DOL will "evaluat[e] whether the alien beneficiary satisfies the employer's actual minimum requirements"). That's the key requirement at issue in this lawsuit.

The employer has the burden of proving that it meets all regulatory requirements before the Department of Labor will grant a labor certification. *See* 20 C.F.R. § 656.2(b).

The next hurdle is getting the noncitizen a visa. If the Department of Labor approves an employer's labor certification application, then the employer must obtain an immigrant visa by

submitting another application (*i.e.*, a Form I-140), along with the certification. *See* 8 C.F.R. § 204.5(a); *Advanced Cabinets Corp. v. Mayorkas*, 2021 WL 825608, at *1 (N.D. Ill. 2021).

At that point, if the government issues a visa, there is one step to go. With the certification and visa in hand, the noncitizen can apply to enter the United States legally. The noncitizen employee applies for lawful permanent resident status. *See* 8 U.S.C. § 1255(a); *Advanced Cabinets*, 2021 WL 825608, at *1.

This case involves the first hurdle: the alien labor certification application. The Department of Labor denied Melnyk's application, so she never passed the first hurdle. The question now is whether the Department of Labor put that hurdle too high.

## Background

Plaintiff Star Way Lines is a trucking company in Palatine, Illinois. *See* Defs.' Resp. to Pls.' Statement of Facts, at ¶ 1 (Dckt. No. 23). In 2013, with business booming, Star Way Lines subcontracted with SD Group to hire a dispatch manager, Svitlana Melnyk. *Id.* at ¶¶ 2, 14; *see also* Defs.' Statement of Additional Facts, at ¶ 27 (Dckt. No. 23). A dispatch manager is in charge of overseeing delivery routes and communicating with drivers. *See* Application (Dckt. No. 13-1, at 238 of 243). Melnyk is a citizen of Ukraine. *See* Defs.' Resp. to Pls.' Statement of Facts, at ¶ 2.

According to Star Way Lines, Melnyk owns SD Group.[1] *See* Pls.' Statement of Facts, at ¶ 14 (Dckt. No. 20). For the next six years, Melnyk worked as the only dispatch manager at Star Way Lines. *See* Defs.' Resp. to Pls.' Statement of Facts, at ¶ 14 (Dckt. No. 23). She was an independent contractor, not an employee. *Id.*

---

[1] That's a disputed fact, but it's not material to the decision.

By September 2019, Melnyk had worked for the company as an independent contractor for six years. That's when Star Way Lines applied for an alien labor certification on Melnyk's behalf to employ her as a dispatch manager. *Id.* at ¶¶ 4, 12.

The application from Stay Way Lines listed the position as "Dispatch Manager" and identified the job requirements as a high school degree and three years of experience in the same or a similar occupation. *Id.* at ¶ 13. The application listed the job location as 300 South Hicks Road, Palatine, Illinois. *See* Defs.' Statement of Additional Facts, at ¶ 29 (Dckt. No. 23).[2]

The application also addressed Melnyk's work history and education. It listed only one job: employment as a dispatcher from August 2, 2013 to the present. *See* Defs.' Resp. to Pls.' Statement of Facts, at ¶ 14 (Dckt. No. 23); *see also* Application (Dckt. No. 13-1, at 233 of 243). Her work history included only one employer: SD Group, located at 300 South Hicks Road. *See* Defs.' Resp. to Pls.' Statement of Facts, at ¶ 14; Application; *see also* Defs.' Statement of Additional Facts, at ¶ 29 (Dckt. No. 23). That's the same address as Star Way Lines.

In June 2020, the Department of Labor Employment Training Administration notified Star Way Lines that it had selected Star Way Lines and Melnyk's alien labor certification application for audit. *See* Defs.' Resp. to Pls.' Statement of Facts, at ¶ 15 (Dckt. No. 23). The audit requested recruitment documentation for the position, proof of the existence of a bona fide job opportunity, and evidence showing the ability of Star Way Lines to pay the wage or salary offered. *Id.* at ¶ 16. The audit also requested any documentation about the relationship between Star Way Lines and SD Group. *Id.* at ¶ 17.

---

[2] Star Way Lines failed to respond to the DOL's 56.1(b)(3) Statement of Additional Facts. Because Star Way Lines failed to respond, the Department's Additional Facts are deemed admitted. *See* L.R. 56.1(e)(3).

Star Way Lines responded to the audit request in July 2020. *Id.* at ¶ 18. Its response stated that as its business grew, Star Way Lines had created a dispatch manager role to ease the duties of its general manager. *See* 7/21/20 Star Way Lines Letter (Dckt. No. 13-1, at 23 of 243). So, it brought on an independent contractor, Melnyk, for the role of dispatch manager in 2013 or 2014. *Id.* at 23–24. By 2019, Star Way Lines decided to internalize the position as a W-2 employee. *Id.* at 23.

In addition, Star Way Lines submitted a copy of the 2014 subcontractor agreement between Star Way Lines and SD Group, and Tax Form 1099s issued to SD Group in 2018 and 2019. *See* Pls.' Statement of Facts, at ¶ 14 (Dckt. No. 20).

On August 6, 2020, the Department of Labor denied the alien labor certification application. *See* Defs.' Resp. to Pls.' Statement of Facts, at ¶ 5 (Dckt. No. 23). The Denial Notice provided one reason: Melnyk's deficient qualifications when the company hired her in 2013. "The foreign worker's experience, as listed on the [application] does not demonstrate the foreign worker met the employer's experience requirements at the time the foreign worker began working for the employer (as a contractor) in the offered position." *Id.* at ¶ 22; *see also* 8/6/20 DOL Reason for Denial (Dckt. No. 13-1, at 7 of 243).

That sentence is the crux of the case. The key question is where to draw the starting line, meaning when to evaluate Melnyk's qualifications to work for Star Way Lines. The agency drew the starting line at *2013*, when Star Way Lines hired her as a dispatch manager (as an independent contractor, not an employee). According to the agency, she had no experience at that point, so she wasn't qualified when she was hired. But Star Way Lines and Melnyk think that the agency should have drawn the line at *2019*, when the company wanted to hire her as a permanent employee.

6

The Denial Notice cited 20 C.F.R. § 656.17(i)(1), stating that "the job requirements, as described, must represent the employer's actual minimum requirements for the job opportunity." *See* 8/6/20 DOL Reason for Denial (Dckt. No. 13-1, at 7 of 243). That section of the regulation also requires the Department of Labor to "review the training and experience possessed by the alien beneficiary at the time of hiring by the employer, including as a contract employee." *See* 20 C.F.R. § 656.17(i)(3).

The Department of Labor emphasized that section 656.17(i)(3) "instruct[s] the department to review the training and experience possessed by the foreign worker at the time of hire, including as a contract employee." *See* 8/6/20 DOL Reason for Denial (Dckt. No. 13-1, at 7 of 243) (emphasis in original). The Department determined that Star Way Lines first hired Melnyk as a contractor in 2013. *See, e.g.*, Defs.' Statement of Additional Facts, at ¶ 27 (Dckt. No. 23); 8/6/20 DOL Reason for Denial (Dckt. No. 13-1, at 7 of 243) ("Notably, in its response to the Department's Audit Notification dated June 23, 2020, the employer also acknowledges the foreign worker 'has been working with Star Way Lines as a contractor since 2013.'").

Since Melnyk did not have experience as a dispatch manager or a comparable position in *2013*, the Department of Labor determined that she did not possess the requisite three years of experience when Star Way Lines hired her. "Therefore, the application is denied because the employer's requirements as stated on the application cannot represent the employer's actual minimum requirements since the employer is/was willing to employ the foreign worker in the offered job [as a contractor] without possessing the necessary three years' experience." *See* 8/6/20 DOL Reason for Denial (Dckt. No. 13-1, at 7 of 243).

In other words, the company hired her as an dispatch manager (as an independent contractor) in 2013, and at *that* point, she didn't have the requisite three years of experience. In

7

the agency's view, it didn't matter that Melnyk was qualified at the time of the application, because the relevant point in time was "*at the time of hiring* by the employer, including as a contract employee." *See* 20 C.F.R. § 656.17(i)(3) (emphasis added). And when she was hired in 2013, she didn't have three years of experience.

In the Denial Notice, the Department included language notifying Star Way Lines of its right to request review of the denial with the Board of Alien Labor Certification Appeals ("BALCA"). *See* Defs.' Statement of Additional Facts, at ¶ 30 (Dckt. No. 23); *see also* 8/6/20 DOL Letter (Dckt. No. 13-1, at 6 of 243). The notice stated that failure to seek review of the denial before the BALCA within 30 days of the denial would constitute a failure to exhaust administrative remedies. *See* Defs.' Statement of Additional Facts, at ¶ 31.

Star Way Lines did not request review before the BALCA. Instead, Star Way Lines and Melnyk went straight to court. On August 18, 2020, Star Way Lines and Melnyk filed this lawsuit against the Department of Labor and its Secretary, Martin Walsh, seeking judicial review under the Administrative Procedure Act ("APA"). *See* Cplt. (Dckt. No. 1).

Star Way Lines and Melnyk seek a declaratory judgment that the agency's decision violates federal regulations, is arbitrary, capricious, and an abuse of discretion, and otherwise is not in accordance with the law. *Id.* at ¶ 33. They claim that the Department of Labor erred in interpreting 20 C.F.R. § 656.17(i)(3), and should have considered Melnyk's six years of experience as a dispatch manager (as an independent contractor) in determining whether she had the requisite three years of experience. *Id.* at ¶¶ 37, 40.

The parties filed cross motions for summary judgment based on the administrative record.

## Legal Standard

Normally, a district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

But in a case involving review of a final agency action under the APA, "summary judgment instead serves as a 'mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review.'" *Fisher v. Pension Benefit Guar. Corp.*, 468 F. Supp. 3d 7, 18 (D.D.C. 2020) (quoting *Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1, 9 (D.D.C. 2019)).

Courts give deference to the agency's decision when reviewing denials of alien labor certifications. *See Boutte v. Duncan*, 348 F. App'x 151, 154 (7th Cir. 2009); *see also Stenographic Machs., Inc. v. Reg'l Adm'r for Emp. & Training*, 577 F.2d 521, 524 (7th Cir. 1978). Courts can only set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence in the case, or not in accordance with law." *Fliger v. Nielsen*, 743 F. App'x 684, 687 (7th Cir. 2018) (quoting *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 853 (7th Cir. 2009)); *see also Stenographic Machs.*, 577 F.2d at 524; 5 U.S.C. § 706(2)(A), (E). Judicial review is "confined to the administrative record." *Little Co. of Mary Hosp.*, 587 F.3d at 856.

So, "[t]o survive summary judgment under the APA, the plaintiffs must point to facts or factual failings in the administrative record that indicate that the [agency's] decision is arbitrary, capricious, an abuse of discretion, [unsupported by substantial evidence,] or otherwise not in accordance with law." *Advanced Cabinets*, 2021 WL 825608, at *3 (cleaned up).

"To determine whether an agency's decision was arbitrary or capricious, [courts] ask if it was 'based on a consideration of the relevant factors and whether there has been clear error of judgment.'" *Boutte*, 348 F. App'x at 154 (quotation marks omitted) (quoting *Ind. Forest Alliance, Inc. v. U.S. Forest Serv.*, 325 F.3d 851, 858–59 (7th Cir. 2003)); *see also Stenographic Machs.*, 577 F.2d at 24. Even when the agency decision isn't clear, courts will uphold the decision if "the agency's path may be reasonably discerned." *See Boutte*, 348 F. App'x at 154 (quotation marks omitted). In reviewing an agency's decision, courts do not substitute their own judgment for that of the agency. *Id.*; *Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Courts must affirm administrative decisions that are supported by "substantial evidence" if there is a "rational connection between the facts found and choice made." *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962); *State Farm*, 463 U.S. at 43. "Substantial evidence" is merely relevant evidence that a reasonable person might accept as adequate to support a conclusion. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1981).

**Analysis**

Star Way Lines and Melnyk seek a declaratory judgment that sets aside the denial of their labor certification application. *See* Cplt., at 9 (Dckt. No. 1). They argue that the Department erred in interpreting its own regulation, including the meaning of the term "contract employee." *See* Pls.' Mtn. for Summ. J., at 5 (Dckt. No. 19). They claim that the term "contract employee" is not genuinely ambiguous, and that the Department's interpretation is not reasonable. *Id.* at 5–7. In their view, the Department's decision was arbitrary, capricious, not supported by the record, and in violation of law. *Id.* at 2, 9.

The Department argues that it is entitled to summary judgment because Star Way Lines and Melnyk failed to exhaust their administrative remedies. *See* Defs.' Mtn. for Summ. J., at 7 (Dckt. No. 22). On the merits, the agency also argues that the operative phrase is not "contract employee," but rather "at the time of hiring by the employer." The DOL points out that Star Way Lines hired her (albeit as an independent contractor) in 2013, so that's the relevant point in time for measuring her experience. *Id.* at 8–9 (Dckt. No. 22).

This Court starts and ends with exhaustion. Melnyk failed to exhaust, so the Court doesn't need to get into the merits.

**I.      Exhaustion**

The first question is whether Star Way Lines and Melnyk exhausted their administrative remedies.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)). Under the doctrine, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Id.* at 88–89 (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938)).

Exhaustion serves two purposes. It protects administrative agency authority by allowing an agency to correct its own mistakes before being pulled into federal court. *Id.* at 89. And it promotes efficiency: claims are usually resolved more quickly in agency proceedings than in federal court litigation. *Id.*

"The exhaustion requirement can be statutorily created or judicially created (so-called 'common-law exhaustion')." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1015 (7th Cir. 2004).

11

Often, agency statutes don't address exhaustion. But when they do, courts must follow the statute and cannot simply "apply common law exhaustion doctrine with its pragmatic, judicially defined exceptions." *Id.* (quotation marks omitted) (quoting 2 Kenneth C. Davis *et al.*, Administrative Law Treatise § 15.3 (3d ed. 1994)).

So, the Court must start with the relevant statutory text to determine administrative exhaustion requirements.

Star Way Lines and Melnyk filed suit under the APA. Section 10(c) of the APA codifies administrative exhaustion. *See* 5 U.S.C. § 704. Section 10(c) only permits judicial review of "final" agency actions. *Id.* "[A]ny definitive agency decision is considered 'final,' and therefore reviewable, unless the agency's regulations require exhaustion as a prerequisite to judicial review." *Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383, 389 (7th Cir. 2000) (citing *Darby v. Cisneros*, 509 U.S. 137, 153 (1993)); *see also Alto Dairy v. Veneman*, 336 F.3d 560, 568 (7th Cir. 2003).

In other words, "[w]hen an aggrieved party has exhausted all administrative remedies *expressly* prescribed by statute or agency rule, the agency action is 'final for the purposes of [the APA]' and therefore 'subject to judicial review.'" *Darby*, 509 U.S. at 146 (emphasis added). An aggrieved party must jump through all of the hoops raised by Congress and the executive branch before coming to the federal courthouse.

The APA does not allow courts to require administrative exhaustion in the absence of a statute or regulation requiring it. The APA, "by its very terms, has limited the availability of the doctrine of exhaustion of administrative remedies to that which [a] statute or rule clearly mandates." *Darby*, 509 U.S. at 146.

The Department argues that 20 C.F.R. § 656.24(e)(3) contains an exhaustion requirement. *See* Defs.' Mtn. for Summ. J., at 7 (Dckt. No. 22). Section 656.24(e) describes what the Department of Labor must include in the Final Determination form if the Department denies the labor certification. *See* 20 C.F.R. § 656.24(e). The Final Determination form must give the reasons for the agency's decision, and so on. *Id.*

Subpart three requires the Final Determination to notify the aggrieved party of the need to exhaust administrative remedies. "If the labor certification is denied, the Final Determination form will: . . . (3) Advise that failure to request review within 30 days of the date of the determination, as specified in § 656.26(a), constitutes a failure to exhaust administrative remedies . . . ." *See* 20 C.F.R. § 656.24(e)(3).

That language is not the most direct route for imposing an exhaustion requirement. The regulation did not come out and say, in straightforward fashion, that an aggrieved party must exhaust administrative remedies before filing suit. Instead, the language was about the content of the Notice to the aggrieved party. It required the Department to include certain language in the Notice. From a drafting standpoint, the language did not travel as the crow flies.

Still, it is difficult to know what else that language could mean, except that there is an exhaustion requirement. There would be no need to tell an aggrieved party about an exhaustion requirement if there *was no* exhaustion requirement. The language was circuitous, but it got there.

And worse yet, it would mislead the aggrieved party to say that there is an exhaustion requirement when there is none. If there is no exhaustion requirement, subpart three would be nullity, and courts are loathe to adopt interpretations that render text meaningless surplusage. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (collecting cases).

A related issue is how clearly an agency needs to speak before imposing an exhaustion requirement. In *Darby v. Cisneros*, 509 U.S. 137 (1993), the Supreme Court addressed whether federal courts can add exhaustion requirements as a matter of judicial discretion, above and beyond the requirements imposed by Congress and the agencies themselves. Along the way, the Supreme Court noted that an action is subject to judicial review under the APA "[w]hen an aggrieved party has exhausted all administrative remedies *expressly prescribed* by statute or agency rule." *Id.* at 146 (emphasis added). The Supreme Court went on to say that the APA "by its very terms, has limited the availability of the doctrine of exhaustion of administrative remedies to that which [a] statute or rule *clearly mandates*." *Id.* (emphasis added).

*Darby* involved concerns that the judiciary could lay in the weeds, and spring new exhaustion requirements on unsuspecting litigants. "Congress clearly was concerned with making the exhaustion requirement unambiguous so that aggrieved parties would know precisely what administrative steps were required before judicial review would be available." *Id.* That's not the situation here. In fact, the regulation in question explicitly required the Department to notify losing parties about the need to exhaust. *See* 20 C.F.R. § 656.24(e)(3).

And that's exactly what happened. The DOL let Star Way Lines and Melnyk know about the need to exhaust. *See* 8/6/20 DOL Letter (Dckt. No. 13-1, at 6 of 243). The Department devoted an entire page of the letter to explaining how they could challenge its decision administratively. *Id.* Requiring Stay Way Lines and Melnyk to follow that brightly-lit path is a far cry from setting a "trap for unwary litigants." *See Darby*, 509 U.S. at 147. It is more akin to requiring Star Way Lines and Melnyk to follow instructions.

The Seventh Circuit has also suggested that a statute or regulation must explicitly require exhaustion, or else there is no need to exhaust. For example, in *Shawnee Trail Conservancy v.*

14

*U.S. Dep't of Agric.*, 222 F.3d 383 (7th Cir. 2000), the Seventh Circuit noted that exhaustion was required when "the Forest Service regulations explicitly require exhaustion as a prerequisite to judicial review." *Id.* at 389; *see also Alto Dairy*, 336 F.3d at 568. District courts take a similar approach, looking to what the regulations explicitly require. *See, e.g.*, *Perez v. United States*, 850 F. Supp. 1354, 1360 (N.D. Ill. 1994) ("Yet, critically, nothing in the applicable statute or regulations *requires* Perez to avail himself of the BCNR's broad remedial powers.") (emphasis in original); *Hafeez v. Dorochoff*, 2007 WL 4300582, at *6 (N.D. Ill. 2007) ("Because the immigration statute and regulations *do not mandate* exhaustion of remedies for immediate relative petitions, exhaustion is not a precondition to the exercise of jurisdiction over plaintiffs APA claim.") (emphasis added); *Zaidi v. Chertoff*, 2006 WL 3147722, at *4 (N.D. Ill. 2006) (explaining that exhaustion was required because the statute and implementing regulations "specifically require" exhaustion).

  Overall, the regulation at hand could have imposed an exhaustion requirement in a straightforward manner, with simple language. Instead, it got there through the backdoor, by directing the Department to notify losing parties of the need to exhaust. That language presupposes the existence of an exhaustion requirement. There's no other way to read it.

  On the flipside, Star Way Lines and Melnyk rely on another regulation that addresses the denial of certifications. *See* 20 C.F.R. § 656.26(a). That regulation expressly authorizes aggrieved parties to appeal adverse decisions to the BALCA. "If a labor certification is denied . . . a request for review of the denial . . . may be made to the Board of Alien Labor Certification Appeals by the employer or debarred person or entity by making a request for such an administrative review . . . ." *See* 20 C.F.R. § 656.26(a).

15

Star Way Lines and Melnyk read that language to mean that there is no exhaustion requirement at all. They point out that an aggrieved party *may* appeal, not *must* appeal. And "may" is discretionary. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016) ("[W]e have emphasized that the word 'may' clearly connotes discretion."); *United States v. Sutton*, 962 F.3d 979, 986 (7th Cir. 2020) ("The use of 'may' is quintessential discretionary language.").

It is true that "may" is discretionary, not mandatory. And it is true that that regulation does not *require* a losing party to pursue an appeal to the BALCA. But those facts don't mean that there is no exhaustion requirement.

That regulation simply explains how an aggrieved party can appeal if it wants to appeal. The use of "must" would be potentially confusing. After all, a losing party isn't *required* to appeal. An appeal isn't mandatory. Maybe the losing party will decide to accept the agency's decision, and move on. By way of illustration, the rule covering notices of appeal in federal court uses the word "may" too. *See* Fed. R. App. P. 3(a)(1). The losing party "may" appeal, but doesn't have to. *Id.*

The use of "may" does not mean that an aggrieved party can sidestep the administrative appeal process, and go right to federal court. It didn't make an administrative appeal optional. The regulation simply explained how to appeal if the party wants to appeal.

Taken together, the two regulations chart the path forward. One regulation says that the losing party can challenge an adverse decision by going to the BALCA, if it wants to appeal at all. *See* 20 C.F.R. § 656.26(a). The other regulation says, albeit in roundabout fashion, that the aggrieved party *must* exhaust administrative remedies if it wants to challenge the agency's

decision. *See* 20 C.F.R. § 656.24(e)(3). They send the following message: if you want to appeal, here's how you have to do it.

In sum, Star Way Lines and Melnyk had no obligation to challenge the Department's denial of their application. But if they wanted to challenge that decision, they needed to appeal to the BALCA. They needed to exhaust their administrative remedies. But instead, they went straight to the federal courthouse. So, they jumped the gun by filing suit.

The parties cite some case law, but it is not much help. The government relies on *De Jesus Ramirez v. Reich*, 156 F.3d 1273 (D.C. Cir. 1998). There, the D.C. Circuit addressed a challenge to the Department's denial of labor certifications. Along the way, the D.C. Circuit took note of the lower court's dismissal for lack of exhaustion. The lower court "feared that a contrary result would give employers an incentive to 'short-cut' the administrative scheme by sending aliens directly to court to argue the merits of the labor certification applications." *Id.* at 1277. But the D.C. Circuit resolved the issue on other grounds because of an exhaustion wrinkle – the employees wanted to challenge the denial, but their employer did not. *Id.*

The case law offered by Star Way Lines and Melnyk is not much better. Three of Plaintiffs' cited cases don't mention exhaustion at all. *See generally Sec'y of Labor v. Farino*, 490 F.2d 885 (7th Cir. 1973); *First Girl, Inc. v. Regul. Manpower Adm'r of U.S. Dep't of Labor*, 499 F.2d 122 (7th Cir. 1974); *Gladysz v. Donovan*, 595 F. Supp. 50 (N.D. Ill. 1984).

And their fourth case doesn't move the needle. In *Gentis, Inc. v. Oates*, 2011 WL 93851 (E.D. Pa. 2011), the court considered whether the BALCA must review an adverse decision about labor certification. But the court considered the exhaustion requirements under the statute (only), not the regulations. That is, the court considered whether the Immigration and

17

Nationality Act requires exhaustion of administrative remedies in labor certification cases, without getting into the requirements of the regulations. *See Gentis*, 2011 WL 93851, at *3–4.

This Court located one case that required BALCA review before judicial review. *See generally Powell Elec. Mfg. Co. v. Solis*, 2009 WL 995278 (N.D. Tex. 2009). But it did so through the doctrine of common-law exhaustion, or prudential exhaustion. In *Powell*, the court considered whether an employer had to appeal to the BALCA after the Department of Labor denied its application for labor certification for failing to submit a response to a Notice of Findings. *Id.* at *7. The court held that the INA did not mandate an appeal to the BALCA, but common-law exhaustion principles did. *Id* at *8. To the court, it was "a situation in which agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision." *Id.*

This Court lands in the same place, but gets there a different way. Common-law exhaustion doesn't apply to claims brought under the APA. *See Darby*, 509 U.S. at 146. So, it can't apply here. Still, one of the regulations requires the Department to tell losing parties that they must exhaust administrative remedies. It's hard to see what that regulation means unless there is an exhaustion requirement.

One final issue remains. Star Way Lines and Melnyk invite this Court to give them an excused absence from exhaustion, because it would take too long. *See* Pls.' Resp., at 3 (Dckt. No. 26). They offered examples of two cases where review by the BALCA took four years. *Id.* at 3 n.1.

This Court declines that invitation. If courts are not in the business of writing exhaustion requirements, then presumably courts shouldn't be in the business of un-writing exhaustion requirements, either. Or at the very least, they should hesitate before doing so, and proceed

18

cautiously. The Seventh Circuit has recognized limited situations when a court can excuse a party from jumping through the exhaustion hoops, including: "(1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised." *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002).

This case does not fit within any of those narrow exceptions. Star Way Lines and Melnyk have not demonstrated that review by the BALCA is foreordained to take years on end. They offer two examples, but that's not much of a data set. Any prejudice is entirely speculative.

The Department's motion for summary judgment for failure to exhaust administrative remedies is granted.

## Conclusion

For the foregoing reasons, the Court denies Plaintiffs' motion for summary judgment. The Court grants Defendants' motion for summary judgment for lack of exhaustion.

Date: March 31, 2022

_____

Steven C. Seeger
United States District Judge